James J. COLLINS, Jr.,
Plaintiff–Appellee,

v.

Judith HARRISON–BODE,
Defendant–Appellant,

Monet Group, Inc., Monet Group
Holdings, Inc., Defendants.

Docket No. 01–7791.

United States Court of Appeals,
Second Circuit.

Argued: April 1, 2002.

Decided: Sept. 6, 2002.

Robert M. Callagy, (James F. Rittinger, James J. Coster, and Anne B. Carroll, on the brief), Satterlee Stephens Burke & Burke LLP, New York, NY, for Defendant–Appellant.

Gail I. Auster, the Law Offices of Gail I. Auster & Associates, P.C., White Plains, NY, for Plaintiff–Appellee.

Before: WALKER, Chief Judge,
NEWMAN and KEARSE, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge:

Defendant-appellant Judith Harrison–Bode appeals from a judgment of the United States District Court for the Southern District of New York (John F. Keenan, *District Judge*) granting plaintiff's motion to enforce a settlement agreement against her and denying Harrison–Bode's cross-motion for reformation of the same agreement.

## BACKGROUND

This appeal requires us to interpret a settlement agreement entered into following a lawsuit brought by plaintiff James J. Collins challenging his termination from his position as Executive Vice President for Sales of the Monet Group, Inc. ("MGI"), a jewelry company, and seeking damages. Alleging, *inter alia,* theories of contract breach and emotional distress, Collins named MGI, its parent company, Monet Group Holdings, Inc., and then-President of MGI, defendant-appellant Judith Harrison–Bode as defendants. After lengthy discussions, Collins, MGI, and Harrison–Bode entered into a Settlement Agreement and General Release ("Settlement Agreement") in 1999. Pertinent to this appeal, the Settlement Agreement provided that Collins was to receive $650,000: an initial payment of $125,000, followed by twelve equal monthly payments. MGI paid the initial $125,000 and three subsequent installments and then stopped making the payments.

After the payments ceased, Collins's attorney wrote to MGI in a letter dated December 8, 1999, demanding that it issue a letter of credit as required by the Settlement Agreement in the event of a missed payment. MGI did not do so. In May 2000, MGI filed for bankruptcy. At some point after the bankruptcy filing, Collins contacted defense counsel claiming that Harrison–Bode was personally liable for the settlement payments and demanding payment.

When Harrison–Bode refused to pay, Collins filed a motion to enforce the Settlement Agreement against her. In response, Harrison–Bode cross-moved for reformation of the agreement on the basis of mutual mistake. By opinion and order, the district court granted Collins's motion for enforcement against Harrison–Bode and denied Harrison–Bode's cross-motion for reformation. *See Collins v. Monet Group, Inc.,* 2001 WL 293821 (S.D.N.Y. Mar. 27, 2001). Harrison–Bode now appeals.

## DISCUSSION

■ Harrison–Bode first argues that the district court erred in concluding that the Settlement Agreement is unambiguous. She also argues that we should resolve the ambiguity in her favor in light of the extrinsic evidence, and that we should reverse the district court's denial of her cross-motion for reformation and reform the agreement to correct the parties' mutual mistake.

I. Ambiguity in the Settlement Agreement

Harrison–Bode argues that the term "Monet," which the district court interpreted as unambiguously including Harrison–Bode in the settlement, is ambiguous when the agreement is considered in its entirety. The term "Monet" first appears in the Settlement Agreement in the preambulary release clause (the "release clause"), which provides as follows:

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** (the "Re-

lease") is entered into as of August ——, 1999, by and between The Monet Group, Inc., its parent, subsidiaries, affiliates, successors and assigns, members, officers, employees, representatives, insurance carriers and agents, Judith Harrison–Bode (collectively "Monet"), and James J. Collins, Jr., his heirs, administrators and assigns ("Collins").

The Settlement Agreement then provides for installment payments to Collins as follows:

> Monet shall pay to Collins ... the sum of one hundred and twenty-five thousand dollars ($125,000) (the "Initial Payment") as and for reimbursement for business, relocation and other expenses incurred by Collins. In addition, Monet agrees to pay directly into a deferred compensation account to be solely established by Collins ... the sum of $525,000 to be paid over a period of twelve (12) months ... at a rate of $43,750 per month ....

Despite being included in the definition of "Monet" as set forth in the release clause, Harrison–Bode argues that the parties never intended for her to be responsible for funding the settlement payments. She contends that the use of the term "Monet" in the Settlement Agreement is ambiguous, pointing to a number of inconsistent ways that the term is used, some of which could be referring only to MGI.

In support of her argument, Harrison–Bode identifies at least four uses of the term "Monet" in the Settlement Agreement that could not possibly be referring to Harrison–Bode: (1) the Settlement Agreement refers to Collins's employment at and employment agreement with "Monet" (he was an employee of MGI); (2) the terms "Monet Common Stock," "Monet Preferred Stock," "Monet's Junior Subordinated Note," and "Chief Administrative Officer of Monet" could only be referring

to MGI; (3) if Harrison–Bode, by virtue of her inclusion in the definition of "Monet," is liable for the settlement payments, by the same reasoning, liability for payments to Collins would attach to MGI's "subsidiaries, successors and assigns, members, officers, employees, representatives, insurance carriers and agents" because they, too, are included in the definition of "Monet"; and (4) the sample letter of credit that the Settlement Agreement specifies "Monet will issue to Collins" in the event of nonpayment, and that is attached to the Settlement Agreement, refers to "The Monet Group, Inc.," not Harrison–Bode, as the intended payor of the settlement payments. Because "Monet" as used in these contexts makes sense only if it is read to refer solely to MGI, Harrison–Bode argues that the different connotations of the term "Monet" throughout the contract are irreconcilable and that extrinsic evidence should be used to determine what the parties intended when they used the term "Monet."

In response, plaintiff Collins contends that the term "Monet" is clear and that its meaning is corroborated by the General Release, which is incorporated into the Settlement Agreement by reference. *See* Settlement Agreement ¶ 4. The General Release provides, in pertinent part, as follows:

> James J. Collins Jr. in consideration of the sum of Six Hundred and Fifty Thousand Dollars as RELEASOR, received from Monet Group, Inc., The Monet Group Holdings, Inc. and Judith Harrison–Bode as RELEASEES ... discharges the RELEASEES ... from ... any claims or causes of action in tort, express or implied contract, public policy, or statute....

The General Release, Collins contends, reaffirms that both MGI and Harrison–Bode are liable for the settlement pay-

ments and that the Settlement Agreement is not ambiguous. Collins also argues that, should we conclude that "Monet" is ambiguous, the case should be remanded to the district court for further fact-finding because the record does not contain all of the relevant extrinsic evidence.

■■■ It is well established that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir.1999). On appeal, we review the district court's determination of whether a contract is ambiguous *de novo. Id.* at 484; *see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 232 F.3d 153, 158 (2d Cir.2000) ("The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court.").

■■■ If we determine that a contract is ambiguous, two courses are open to us depending on the circumstances. We "may resolve [an] ambiguity in ... contractual language as a matter of law if there is no extrinsic evidence to support one party's interpretation of the ambiguous language or if the extrinsic evidence is so one-sided that no reasonable factfinder could decide contrary to one party's interpretation." *Compagnie Financiere,* 232 F.3d at 159. Or, we may remand for the trial court to consider and weigh extrinsic evidence to determine what the parties intended. *See, e.g., Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 430 (2d Cir.1992).

■■■ Under New York law,[1] the question of ambiguity *vel non* must be deter-

mined from the face of the agreement, without reference to extrinsic evidence. *Kass v. Kass,* 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998); *see also Terwilliger v. Terwilliger,* 206 F.3d 240, 245 (2d Cir.2000) (construing New York law). "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Compagnie Financiere,* 232 F.3d at 158 (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993)); *see Seiden Assocs.,* 959 F.2d at 428; *Metro. Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990).

■■■ In deciding whether an agreement is ambiguous,

> [p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought.

*Kass,* 91 N.Y.2d at 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (quoting *William C. Atwater & Co. v. Panama R.R. Co.,* 246 N.Y. 519, 524, 159 N.E. 418 (1927)).

A contextual reading of the term "Monet" leads us to conclude that the term's meaning is ambiguous and that it is used in a number of ways throughout the agreement that cannot be reconciled without resorting to parol evidence. As the Appellate Division for the First Department has explained, "[w]here ... there are internal inconsistencies in a contract pointing to ambiguity, extrinsic evidence is admissible

1. The Settlement Agreement specifically provides that New York law applies, and the parties have not argued otherwise. Accordingly, "[w]e see no reason for us not to apply the law of New York." *VKK Corp. v. Nat'l*

*Football League,* 244 F.3d 114, 129 n. 10 (2d Cir.2001) (applying New York law where contract at issue specified that New York law applies and the parties proceeded "on the assumption that New York law applies").

to determine the parties' intent." *Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 691 N.Y.S.2d 508, 512 (1st Dep't 1999).

In *Federal Insurance Co.*, the court was faced with the question of whether a particular·wholly-owned subsidiary was covered under the terms of its parent company's insurance policy. Despite that the policy expressly stated that it covered "each and every owned and/or actively managed and/or financially controlled subsidiary, organization, company, corporation, joint venture, partnership, or other entity," *id.* at 510, the court concluded that the contract was ambiguous due to internal inconsistencies in the agreement. *Id.* at 511–12. The court then examined extrinsic evidence that led it to find that the subsidiary was not covered by the policy. *Id.* at 512–13.

Similarly in this case, notwithstanding that the release clause at issue includes Harrison–Bode within its definition of "Monet," the uses of that term are inconsistent and irreconcilable. Furthermore, the sample letter of credit appended to the Settlement Agreement, and appropriately considered as within the four corners of the contract, supports Harrison–Bode's argument that the parties intended that only MGI would be responsible for the settlement payments. As the district court observed, the sample letter of credit "requires, as a condition of its issue, that either 'James Collins (or Gail I. Auster[, Esq.])' swear under oath that 'I have not received payment from The Monet Group, Inc.'" *Collins*, 2001 WL 293821, at *2.

The impossibility of sensibly reconciling the usage of the term "Monet" throughout the contract with the definition set forth in the release clause leads to our conclusion that the Settlement Agreement is ambiguous. Consequently, we conclude that this is an instance where "[f]orm [does] not prevail over substance and a sensible meaning of [the] words." *Kass*, 91 N.Y.2d

at 566, 673 N.Y.S.2d 350, 696 N.E.2d 174. We thus vacate the district court's judgment in favor of Collins based on its determination that the Settlement Agreement is unambiguous.

■ We decline, however, to resolve the ambiguity in the Settlement Agreement on appeal. Because the district court found the Settlement Agreement to be unambiguous, it did not consider the extrinsic evidence. *Cf. Seiden Assocs.*, 959 F.2d at 430 ("Because of the presence of an ambiguity, an opportunity to present extrinsic evidence must be afforded to establish what the original contracting parties intended."). Thus, on the present record, we cannot conclude that there is no extrinsic evidence to support plaintiff's interpretation of the agreement. *Compagnie Financiere*, 232 F.3d at 159. Nor can we conclude that "the extrinsic evidence is so one-sided that no reasonable factfinder could decide contrary to one party's interpretation." *Id.* Accordingly, we remand the case to the district court to provide the parties an opportunity to present extrinsic evidence.

## II. The Reformation Claim

■ Harrison–Bode challenges the district court's rejection of her cross-motion to reform the contract based on mutual mistake. "In the proper circumstances, mutual mistake or fraud may furnish the basis for reforming a written agreement." *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986); *see also* Restatement (Second) of Contracts § 155 (1981) ("Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement . . . .").

Because the remedy of reformation presents the danger "that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract," *Chimart*, 66 N.Y.2d at 573, 498 N.Y.S.2d 344, 489 N.E.2d 231, the New York courts have sharply limited the remedy of reformation both procedurally and substantively. *Id.* at 574, 498 N.Y.S.2d 344, 489 N.E.2d 231. "The proponent of reformation must 'show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'" *Id.* (quoting *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978)); *see also Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2d Cir.1992) ("To reform a contract, mutual mistake must be established by clear and convincing evidence. Unilateral mistake alone will not justify reformation of an instrument." (applying New York law)) (citations omitted).

The extrinsic evidence submitted by Harrison–Bode does not meet New York's stringent standard for reformation because it does not show "in no uncertain terms ... exactly what was really agreed upon between the parties." *Chimart*, 66 N.Y.2d at 574, 498 N.Y.S.2d 344, 489 N.E.2d 231 (quoting *George Backer Mgmt.*, 46 N.Y.2d at 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062). To order reformation, we would have to conclude that the meaning of the term "Monet," as included in the final agreement, was intended by all parties to refer only to MGI. This conclusion is not warranted on the present record. The district court's denial of plaintiff's cross-motion for reformation is therefore affirmed.

## CONCLUSION

The judgment of the district court is affirmed in part, vacated in part, and the case is remanded for further proceedings consistent with this opinion. Each party shall bear its own costs for this appeal.