Carl H. LOEWENSON, Jr.,
Receiver–Appellee,

v.

LONDON MARKET COMPANIES,
Certain Underwriters at Lloyd's,
London, Defendants–Appellants.

No. 02–6322.

United States Court of Appeals,
Second Circuit.

Submitted: Oct. 7, 2003.

Decided: Dec. 5, 2003.

sitting by designation.

Paul C. Fonseca, Pattison & Flannery, New York, N.Y., for Defendants–Appellants.

Randy Paar, Dickstein Shapiro Morin & Oshinsky, LLP (Edward Tessler, Ryan Luft, on the brief), New York, N.Y., for Receiver–Appellee.

Before: WALKER, Chief Judge, NEWMAN and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

Most people would think that insurance underwriters are very good at numbers. This appeal demonstrates that sometimes they are not. The appeal presents the issue of whether a flawed calculation constitutes the sort of mutual mistake that justifies reformation of a contract, in this case, a settlement agreement. London Market Companies and Certain Underwriters at Lloyd's of London, third-party-defendants-appellants ("Underwriters"), appeal from the January 6, 2003, judgment of the District Court for the Southern District of New York (Robert W. Sweet, District Judge) in favor of receiver-appellee Carl H. Loewenson, Jr., as receiver for Credit Bancorp, Ltd. and its affiliated companies ("Receiver"). The judgment denies the Underwriters' motion under Rule 60(b) of the Federal Rules of Civil Procedure to reform the provision of a settlement agreement ("Settlement") calling for the return of an unearned premium, grants the Receiver's motion to enforce the agreement, and orders the Underwriters to pay the Receiver the balance due under the Settlement.

We conclude that, although the calculation of the amount of the unearned premium is flawed, the parties agreed not only to the amount to be returned but also to the flawed methodology by which the amount was determined, and that such circumstances do not constitute the sort of mutual mistake that warrants reformation under applicable New York law. We therefore affirm.

## Facts

Only a few facts are pertinent to the pending appeal.[1] The Underwriters issued an all risk policy to Credit Bancorp, Ltd. ("CBL") providing coverage for losses up to $450 million for the period from August 1, 1998, to April 1, 2001. The premium, due in yearly installments, was at the rate of $450,000 per year. Thus, the payments were to have been $450,000 for the first and second years and $313,150 for the partial third year.[2] After the first year's premium was paid, the policy limit was amended on April 29, 1999, to reduce the coverage to $300 million, and the premium was reduced to a rate of $225,000 per year. Reflecting that amendment, the Underwriters returned $62,260 to CBL, representing the portion of the first year for which a premium at the original $450,000 rate was unearned. That reduced the first year's premium to $387,740. The reduced installment for the second year became $225,000 and for the partial third year, $156,575. CBL paid the second year's premium of $225,000.

The Receiver for CBL was appointed on January 21, 2000, an event that terminated the policy 173 days into the second year of coverage. The policy stipulated that the Underwriters shall refund the unearned premium, "computed pro rata," if the policy is terminated by reason of a receivership. The Receiver sought return of the unearned premium, and the Underwriters agreed to its return.

By letter dated November 20, 2001, counsel for the Underwriters wrote to counsel for the Receiver, proposing an amount of unearned premium to be refunded and explaining precisely their method of calculation. The amount was $205,237.26. The calculation involved four steps. First, the Underwriters determined that no coverage was provided for 435 days of the total policy period (two and two-thirds years or 974 days). Second, they divided 435 by 974 and got 44.66 percent. Third, they applied 44.66 percent to the total amount of premiums that were paid, $612,740 ($387,740 for the first year plus $225,000 for the second year), yielding $273,649.68. Fourth, they subtracted 25 percent, representing the brokerage fee, yielding $205,237.26 as the net amount of premium to be refunded.

The Receiver agreed with the Underwriters' refund figure, and it was ultimately incorporated into the Settlement, which settled various disputes between the parties in litigation pending before the District Court, including the Receiver's claims for unearned premiums for other insurance policies, several of which had been subscribed to by the Underwriters. After providing that the Underwriters would pay the Receiver just over $58 million in settlement of various claims, an amount referred to in the Settlement as "the Settlement Amount," the Settlement further provided:

> 3. In addition to the Settlement Amount ... [Underwriters] subscribing to [the all risk policy] shall pay the

---

1.  The background of the underlying litigation is set forth in *SEC v. Credit Bancorp, Ltd.,* 147 F.Supp.2d 238 (S.D.N.Y.2001), and *SEC v. Credit Bancorp, Ltd.,* 93 F.Supp.2d 475 (S.D.N.Y.2000).

2.  It is not clear from the record why the premium for the partial third year was to have been $313,150. Since the policy was to have been in effect for eight of the twelve months of the third year, the pro-rated premium would have been two-thirds of $450,000, or $300,000. Or, if pro-rated according to the 243 days between August 1, 2000, and April 1, 2001, the premium would have been $299,589.04. We will assume that some basis existed for pro-rating the expected third-year premium to $313,150. In any event, that figure has no bearing on any aspect of this appeal.

Receiver two hundred five thousand two hundred thirty-seven dollars and twenty-six cents (US$205,237.26) as a return of unearned premiums.

The District Court approved the Settlement by order entered March 18, 2002.

On September 27, 2002, the Receiver filed a motion to enforce the Settlement and for judgment against the Underwriters in the amount of $205,237.26. On October 4, the Underwriters filed a cross-motion for an order amending the Settlement and denying the Receiver's motion to enforce the Settlement. Counsel for the Underwriters averred in support of the cross-motion that one of the Underwriters had determined that the $205,237.26 figure was incorrect and that the correct amount of premium to be returned was $88,767.12. Counsel's explanation made clear that the new figure was obtained by taking the same four steps in the original calculation, but taking them only with respect to the second year. Thus, the first step was to determine that no coverage was provided for 192 days of the second year. Second, 192 was divided by 365, which equaled 52.60274 percent. Third, 52.60274 percent was applied to the premium paid for the second year, $225,000, yielding $118,356.16. Fourth, 25 percent was subtracted, representing the brokerage fee, yielding $88,767.12.

In an opinion dated November 20, 2002, Judge Sweet denied the Underwriters' cross-motion to amend the Settlement and granted the Receiver's motion to enforce the Settlement. Judgment was entered January 6, 2003, for the difference between the $205,237.26 due as a return of unearned premium and the $88,767.12, which the Underwriters acknowledged was due and had paid, plus interest.

## Discussion

■ The parties are in agreement on several aspects of the law concerning the pending appeal: New York law applies to the Settlement; in New York a settlement agreement is construed according to general principles of contract law; an unambiguous agreement must be construed according to its terms without resort to extrinsic evidence; and reformation of a contract is available for mutual mistake provided the party claiming reformation can "show in no uncertain terms, not only that mistake ... exists, but exactly what was really agreed upon between the parties," *George Backer Management Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 139, 385 N.E.2d 1062 (1978).

The Underwriters initially contend that the Settlement is ambiguous because paragraph 3 specifies the amount of $205,237.26 and refers to it "as a return of unearned premium." Like Judge Sweet, we see no ambiguity arising from this wording. The parties unambiguously agreed that, "in addition to the Settlement Amount," the Underwriters would return the unearned premium resulting from the termination of the policy. And they unambiguously agreed that the amount of the unearned premium to be returned was $205,237.26. What they seriously dispute is whether the clarity of this aspect of the Settlement should be disregarded and the Settlement reformed.

■ The Underwriters contend that the $205,237.26 figure is the result of a mutual mistake and that the correct figure is $88,767.12. This contention requires consideration of a distinction not usually encountered when reformation is sought on the ground of mutual mistake: the distinction between a simple arithmetic error and a flaw in the methodology of a calculation.

To illustrate the distinction, we start with the methodology used to arrive at the

figure of $205,237.26. As previously noted, the methodology involved dividing the number of days of the entire policy period (two and two-thirds years) when premiums were unearned (435) by the total number of days in that period (974) to obtain the percent of the total period for which premiums were unearned (44.66) and applying that percent to the total amount of premiums paid ($612,740). If in the calculation of the percent of the total policy period when premiums were unearned, the division of 435 by 974 had incorrectly been stated, for example, to be 54.66 instead of 44.66 (yielding a net premium return, after deducting brokerage, of $251,192.76), there would be a strong argument that an arithmetic error of that sort should be corrected by reformation. The argument would be that once the parties agreed on a methodology for determining the amount of the unearned premiums, neither party intended to make an arithmetic error of division and both parties intended that the division would be performed correctly. In such circumstances, a court might well conclude that a mutual mistake had been made and that what the parties intended, *i.e.*, correct arithmetic, was readily inferable. *Cf. Prudential Insurance Co. of America v. S.S. American Lancer*, 870 F.2d 867, 871–74 (2d Cir.1989) (disregarding typographical error stating $92,885.00 instead of $92,885,000.00).

In this case, however, the arithmetic steps taken in implementing the methodology that was used were all correct. What the Underwriters are contending is that the methodology itself was flawed. They are correct. Applying the percent of the total policy period for which premiums were unearned to the payments made for the first and second years had the effect of artificially inflating the amount of the unearned premium by reason of the fact that the premium for the first year was higher than the premium for the second year, which in turn was a consequence of the fact that the original policy limit and the first year premium were not reduced until part way through the first year.

As a matter of methodology, the Underwriters are correct that the right way to calculate the unearned premium where a policy is terminated during the second year and the premium is higher for the first year than for the second year is to apply the percent of just the second year for which a premium was unearned to the premium paid for that second year. That is the methodology that yields the Underwriters' unearned premium figure of $88,767.12.[3]

However, unfortunately for the Underwriters, the flawed methodology used to produce the figure of $205,237.26 was explicitly proposed by them and agreed to by the Receiver. When paragraph 3 of the Settlement included the figure of $205,237.26, it reflected the parties' agreement not just to a number but, in view of the Underwriters' letter of November 20, 2001, to the methodology that had produced that number.

Even though we might be willing to reform an agreement inadvertently based on an arithmetic error, we do not believe that reformation is available for use of a methodology explicitly agreed to by the

**3.** For his part, the Receiver suggested to the District Court that, if any change were to be made from the $205,237.26 figure, the amount of unearned premium should be $160,319. This figure was calculated by applying the portion of the first two years for which a premium was unearned to the combined amount paid for those two years. That methodology suffers from the same flaw as the method used to produce the $205,237.26 figure—it inflates the amount of the unearned premium by including the higher premium for the first year in the calculation.

parties, even though that methodology is flawed. In such circumstances, it cannot be said that a flawless methodology was shown to have been intended by the parties.

The District Court did not err in rejecting the Underwriters' claim for reformation.

Conclusion

The judgment of the District Court is affirmed.