Arnold RISPLER et al., Plaintiffs,

v.

SOL SPITZ CO., INC. et al., Defendants.

No. 04–CV–1323DLIARL.

United States District Court, E.D. New York.

March 6, 2005.

Victoria Quesada, Quesada & Moore, LLP, West Hempstead, NY, for Plaintiffs.

Andrew B. Schultz, Scott M. Zucker, Esq., Jericho, NY, for Defendants.

## DECISION AND ORDER

IRIZARRY, District Judge.

Both parties in the instant Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, matter object to U.S. Magistrate Judge Arelene R. Lindsay's Report & Recommendation ("R & R"), dated May 18, 2005, which found an enforceable settlement agreement ("Settlement Agreement") and required compliance with the provisions of Fed.R.Civ.P. 23.1 ("Rule 23.1") by directing, *inter alia,* that absent plan participants be notified of the Settlement Agreement.

After consideration of the entire record and a *de novo* review of the R & R, *see* Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1), this court adopts the R & R to the extent that it finds Rule 23.1 applicable to the ERISA § 502(a)(2) claims. However, as a result of a hearing held on January 5, 2006, this court finds that there is no enforceable Settlement Agreement.[1]

### Background [2]

After several aborted attempts to reach a settlement in this protracted litigation, the parties reached a Settlement Agreement before M.J. Lindsay on January 21, 2005. The material terms of the Settlement Agreement were placed on the record and defendants agreed to calculate and disburse the value of plaintiffs' account balances in the Sol Spitz Co. Inc. Retirement Trust and Sol Spitz Co. Inc. Profit Sharing Plan (collectively "Pension Plans") using agreed upon dates. Soon after reaching this Settlement Agreement, defendants sought to rescind it, and plaintiffs cross-moved to enforce it. By Order dated April 20, 2005, this court referred the issue of the Settlement Agreement's enforceability to M.J. Lindsay.

In her R & R, Judge Lindsay found, in relevant part, that since the unqualified material terms of the Settlement Agreement were placed on the record by defendants at the settlement conference of January 21, 2005 ("Settlement Conference"), the parties had entered into a binding Settlement Agreement. Judge Lindsay determined that defendants' alleged grounds for rescission, namely, impossibility of performance and mutual mistake, failed for reasons she specified in the R & R. Further, M.J. Lindsay noted that neither party objected at the Settlement Conference when she announced that the case had been settled.

In addition to finding that defendants were bound by the Settlement Agreement reached at the Settlement Conference, M.J. Lindsay also found that, because plaintiffs asserted ERISA §§ 502(a)(2) and 502(a)(3) claims in the complaint, plaintiffs were required to comply with Rule 23.1.

---

1. The facts and circumstances developed at the hearing had not been raised before M.J. Lindsay.

2. The underlying facts of this dispute are set forth in the R & R at pp. 1–4. Familiarity with those facts is assumed.

Specifically, M.J. Lindsay directed plaintiffs to notify absent plan participants of the Settlement Agreement, since the Settlement Agreement would likely affect the absent plan participants' ability to recover.

Defendants timely objected to M.J. Lindsay's R & R on the ground that defendants had conditioned the Settlement Agreement on their actuary's approval. Lacking such approval, defendants had not agreed to agree. Defendants also objected to M.J. Lindsay's finding that the facts as alleged failed to satisfy the standards for voiding an agreement based on impossibility of performance and mutual mistake.

Plaintiffs objected, in relevant part, to that portion of the R & R that found their ERISA claims subject to Rule 23.1.

Before determining whether to adopt the R & R, and, as a consequence, the Settlement Agreement, this court scheduled an evidentiary hearing for January 5, 2006 to assess the fairness, adequacy, and reasonableness of the disputed Settlement Agreement in light of plaintiffs' derivative claims.[3] *See* Rule 23.1; Manual for Complex Litigation § 21.61 (4TH ED.2004).

At the hearing, despite this court's order, dated August 8, 2005, that the hearing was for, *inter alia*, the purpose of determining the fairness and adequacy of the Settlement Agreement, defendants proposed an entirely different settlement offer. This offer was rejected. (Tr. at 12–13.)[4]

All but one of the plaintiffs appeared at the hearing.[5] As the hearing developed, it quickly became apparent that plaintiffs's counsel, Robert Moore, Esq., had misconstrued the purpose of the hearing as well.[6] Plaintiffs were, therefore, not prepared to testify regarding Pension Plan details such as employment periods and the amount and duration of their contributions. Neither Mr. Moore nor Ms. Quesada, plaintiffs' attorney of record, had understood nor conveyed to plaintiffs that, under Rule 23.1, the non-suing plan participants could opt-in or opt-out of the Settlement Agreement thus diminishing the amount that each of the named plaintiffs would recover. (Tr. at 35, 37–38.) After explaining the effects that a non-suing plan participant's opting in would have on the Rule 23.1 Settlement Agreement, the court granted a brief recess to allow the parties to consider the Settlement Agreement further. (Tr. at 43–47, 51.) After the recess, plaintiffs indicated that they did not seek to enforce the Settlement Agreement on these terms. Plaintiffs also expressed concerns about the diminished available funds in the Pension Plans—funds that were unaccounted for and, they believe, improperly diverted. (Tr. at 47, 63.) Most importantly, Mr. Moore conceded, on more than one occasion, that enforcement of the settlement plan would harm the non-suing plan participants. (Tr. at 22, 23.)[7]

3. Originally, the court scheduled the hearing for October 27, 2005. However, neither side was prepared to proceed and, given the parties' schedules, the court adjourned the matter to January 5, 2006. See Docket Entry dated Nov. 9, 2005, *Rispler v. Spitz*, (E.D.N.Y. 2005) (No. 04–cv–1323).

4. "Tr. at ___" refers to the hearing transcript.

5. At plaintiffs' counsel's request, dated Dec. 5, 2005, Plaintiff William G. Reynolds was excused from the hearing.

6. On the day of the hearing, plaintiff's counsel, Victoria Quesada, Esq., was unable to appear for medical reasons. Hence, her partner and husband, Robert Moore, Esq., a non-ERISA lawyer, represented plaintiffs for purposes of the hearing. (Tr. at 2, 11.)

7. Plaintiffs' counsel had expressed this concern throughout the pendency of this litigation. (Tr. at 28.)

At the end of the hearing, this court adopted the R & R to the extent that it found Rule 23.1 applicable to the ERISA § 502(a)(2) claims, but did not approve the Settlement Agreement. This decision memorializes that finding and sets forth the court's reasoning.

### Discussion

A court may adopt those portions of a report and recommendation to which the parties do not object and with which the court finds no clear error. *See* Fed. R.Civ.P. 72(b); *see also Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). However, the district court applies a *de novo* standard of review to those parts of the report to which any party objects. *See* Fed. R.Civ.P. 72(b). The district judge to whom the case is assigned shall consider such objections and shall adopt, modify, or set aside the magistrate judge's report. Fed.R.Civ.P. 72(b).

■ "Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role." *In re Masters Mates & Pilots Pension Plan,* 957 F.2d 1020, 1025 (2d Cir.1992). However, judicial approval is required in certain types of cases, such as in class or derivative actions. *Id.; see also* Fed.R.Civ.P. 23.1; MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed.2004). Before approving a settlement in such cases, a district court must ensure that the terms of a settlement agreement are fair, reasonable, and adequate for all plaintiffs. *See Masters Mates,* 957 F.2d at 1025.

■ In her R & R, Judge Lindsay premised the application of Rule 23.1 on plaintiffs' assertion of ERISA § 502(a)(2) claims and on the language in the complaint claiming injury to the plan. Under § 502(a)(2), the only available relief is plan-wide relief; there is no private right of action. *See Mass. Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985); *see also*

*Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (noting that "[t]he Supreme Court held that the fiduciary duties imposed by Section 409 [made actionable pursuant to the civil enforcement provisions of § 502(a)(2) ] run to a plan and not to individual beneficiaries."). Thus, in the Second Circuit, plaintiffs asserting § 502(a)(2) claims on behalf of the plan must do so via a derivative action. *See, e.g., Diduck v. Kaszycki & Sons Contractors, Inc.,* 874 F.2d 912, 916 (2d Cir.1989) (applying Rule 23.1); *cf. Fisher v. J.P. Morgan Chase & Co.,* 230 F.R.D. 370 (S.D.N.Y.2005) (applying Fed.R.Civ.P. 23).

■ At the hearing, plaintiffs argued that Rule 23.1 does not apply to their claims because the parties settled pursuant to ERISA § 502(a)(1)(b) rather than § 502(a)(2): "[w]e have settled not under 502(a)(2) but under 502(a)(1)(b), which is a[n] [individual] benefit[s] claim.... To the extent, that's only to the extent that the report and recommendation in the language employed by Magistrate Lindsay has—implies or infers that this is a derivative settlement, we take exception to that." (Tr. at 55.) However, a review of the complaint reveals that plaintiffs have asserted ERISA §§ 502(a)(2) and 502(a)(3), but not § 502(a)(1)(b) claims. As noted, § 502(a)(2) can only be brought derivatively. While individual claims are allowed under ERISA § 502(a)(3), such claims can only be brought for equitable relief-not monetary or compensatory damages. *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993) (limiting ERISA § 502(a)(3) claims to equitable relief); *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (authorizing individual § 502(a)(3) claims). Given that plaintiffs seek compensatory and not equitable relief, ERISA § 502(a)(2) governs the Settle-

ment Agreement and, therefore, Rule 23.1 applies.

■■■ Pursuant to Rule 23.1, in addition to assessing the Settlement Agreement's reasonableness, fairness, and adequacy for all plaintiffs, the court must also assess its impact on the rights of other potential plaintiffs as well. *In re WorldCom, Inc. ERISA Litigation,* 339 F.Supp.2d 561, 567 (S.D.N.Y.2004) (citing *Masters Mates,* 957 F.2d at 1025). Plaintiffs admitted, several times, that enforcement of the instant Settlement Agreement would leave the Pension Plans bereft of sufficient funds for other potential plaintiffs.[8] In light of the adverse impact the Settlement Agreement may have on the non-suing plan participants, and given the reservations expressed by the named plaintiffs over the possible diversion of funds and having their share of the Settlement Agreement reduced by non-suing plan participants opting-in, this court determines that the interests of all plan participants is better served by further litigation, rather than by the instant Settlement Agreement. Accordingly, the court declines to adopt the Settlement Agreement.

## Conclusion

The court adopts M.J. Lindsay's R & R to the extent that Rule 23.1 applies to plaintiffs' ERISA § 502(a)(2) claims. However, the court finds that the Settlement Agreement is not enforceable.

This matter will proceed as a derivative action and is hereby referred to M.J. Lindsay for pretrial purposes including directing plaintiffs to notify non-suing plan participants regarding the pendency of the instant action.

## REPORT AND RECOMMENDATION

LINDSAY, United States Magistrate Judge.

By order dated April 22, 2005, District Judge Irizarry referred plaintiffs' motion to enforce the parties' January 21, 2005 settlement agreement to the undersigned for report and recommendation. For the reasons that follow, it is recommended that plaintiffs' application be granted subject to notification to absent participants of the discontinuation of this action and the terms of the settlement.

## BACKGROUND

Plaintiffs, former employees of the Sol Spitz Company ("Company") and participants in the Sol Spitz Co., Inc. Retirement Trust and Profit Sharing Plans (collectively "Plan") commenced this action against the Plan and its sole trustee, Sheldon Spitz, alleging various breaches of fiduciary duty and mismanagement of Plan assets in violation of the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. 1001, *et seq.* These claims are based in part, upon Spitz's alleged failure as the Plan's fiduciary to distribute Plan assets after the sale of the Company in 1994. The Plan is also alleged to have incurred excessive losses and unnecessary expenses as a result of Spitz's mismanagement. In addition to seeking termination and distribution of the Plan's assets, the complaint seeks to hold Spitz personally liable for all losses to the Plan as a result of his mismanagement.

On January 21, 2005, the parties appeared before the undersigned and, following negotiations reached a settlement

---

8. "The reason, our position, the reason that the money that's in the plan now cannot cover, does not cover, the . . . [t]he plan participants who are not in the lawsuit is that this money has been diverted." (Tr. at 22.)

"[T]his settlement which was entered into by the parties and approved by the magistrate after a great deal of time, will not only—only harms the non-suing participants because the money that would be theirs has been diverted." (Tr. at 23.)

agreement. Accordingly, with the plaintiffs' consent, defense counsel recited all material terms of the settlement on the record:

THE COURT: Mr. Rubin, I understand that you're the one who is going to take responsibility for placing the material terms of the settlement on the record.

MR. RUBIN: Right.

THE COURT: All right. Would you please do that?

MR. RUBIN: The settlement will be that plaintiffs will receive 50 percent of the value of the plaintiffs' account balances under the plan as of December 31, 2003, plus 50 percent of the value of the plaintiffs' account balances as of June 30, 2004. That value— that number will be increased by attorney fees expenses which were deducted from the plan from January 1, 2004 through June 30, 2004.

(Tr. at 2–3).[1]

Consistent with the settlement agreement reached on January 21, 2005, the defendants were required to calculate plaintiffs' account balances as of December 31, 2004 and June 30, 2004 to determine the amount to be paid plaintiffs. Following the January 21, 2005 appearance, District Judge Irizarry ordered the parties to file a stipulation of discontinuance by February 22, 2005 "having reached a settlement agreement on January 21, 2005." (*See* Order, dated February 1, 2005). In response to that order, plaintiffs and defendants jointly moved before Judge Irizarry for an extension of the deadline to file the stipulation of discontinuance. That application was granted and defendants were directed to produce the final calculations and payment by March 21, 2005. A stipulation of discontinuance was to be filed by March 31, 2005. (*See* Endorsed Order, dated February 8, 2005). By letter dated March 18, 2005, defendants sought and received a further extension of the deadlines and were ordered to "have the final calculations regarding the Stipulation of Settlement completed AND provided to M.J. Lindsay on or before March 31, 2005." (*See* Endorsed Order, Irizarry, D.J., dated March 21, 2005). Accordingly, by letter dated March 31, 2005, defendants provided the final payment calculations to Judge Irizarry. The calculations provided by defendants indicated that the distribution to plaintiffs in accordance with the settlement would be approximately $1,400,000. (*See* Rubin Letter, dated March 31, 2005). The March 31, 2005 letter also informed the court that:

[T]he June 30, 2004 calculations do not take into account events that occurred from July 1, 2004 to the present. We have determined that the assets remaining in the pooled accounts are not sufficient to pay plaintiffs. Due to market losses during the period January 1, 2005 through March 31, 2005, the assets in the pooled accounts are less than the December 31, 2004. As a result, if [plaintiffs] were to receive a distribution of their accounts based on these prior valuation dates without reflecting current market conditions, the remaining Plan participants who are not [plaintiffs] would lose everything and there still would be a deficit which would bankrupt the Plan. This is not equitable and not a valid settlement.

(*Id.*). Thus, defendants requested that the terms of the settlement agreement be renegotiated to reflect this drop in value.

In response to defendants' March 31, 2005 letter, plaintiffs moved for entry of a

---

1. "Tr. at ___" refers to the transcript of the January 21, 2005 conference before the undersigned.

Settlement Judgment in favor of plaintiffs in the amount of $1,379,543. By Order dated April 20, 2005, Judge Irizarry referred these issues to the undersigned for report and recommendation. The parties appeared before the undersigned on May 2, 2005 to address this issue. After hearing argument, the undersigned granted the defendants' request to file papers in support of their position and permitted plaintiffs' to submit responsive papers. These submissions were made in accordance with the expedited schedule set by the court.

## DISCUSSION

As noted above, the parties appeared before the undersigned on January 21, 2005 and placed a settlement agreement on the record. While defendants now argue, among other things, that the terms placed on the record were merely a "framework" for a settlement that was subject to approval by the Plan's actuary, the record clearly belies such claim. A review of the transcript confirms that the parties placed all "material terms" of the settlement on the record. (Tr. at 19). At no time did defendants indicate that the agreement was conditioned on the Plan actuary's approval of those terms. Rather, as expressly stated on the record, "the only thing that remains to be done to implement the settlement" is that the Plan's actuary "has to prepare the calculation." (Tr. at 19–20). In fact, the court confirmed that all parties agreed to the settlement, and following representations from all counsel that they were authorized to enter into the settlement, stated that: "The settlement is on the record. It's a binding settlement against each party. I am going to mark it a settled case." (Tr. at 25). Defendants concurred with this course of action. (Tr. at 25–26).

The actual amount to be paid plaintiffs was to be determined by the plan's actuary. Each side agreed that the valuation would be done by the actuary consistent with actuarial principles and plan provisions. Although the parties expressed uncertainty as to how two particular accounts would be treated in the valuation, defendants agreed to plaintiffs' suggested treatment of these accounts unless it would violate actuarial principles. As the undersigned noted on the record the settlement formula was agreed and all that was left to be done was to come up with the final "number" (Tr. 20).[2]

Given the clearly articulated settlement terms and the absence of any reservation of right to renegotiate its terms, this court is compelled to conclude that but for the matters raised in paragraph "C" below this is a binding agreement. *See, e.g., Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir. 1989)("A settlement is a contract, and once entered into is binding and conclusive."), *accord Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir.1986), *see also King v. Tully Construction Co., Inc.*, No. CV 98–3535(ILG), 2001 WL 984910, at *1 (E.D.N.Y. July 9, 2001) ("A party that chooses to settle cannot be relieved of such choice merely because its decision to settle was incorrect.").

The court has also considered and rejects defendants' alternative arguments that they should be relieved from their obligations under the terms of the settlement agreement because the parties were mutually mistaken about the Plan's ability to pay the settlement or remain viable post-settlement. Further, the court finds that defendants' assertion that the settlement agreement should be set aside under the doctrine of impossibility of perform-

---

**2.** Significantly neither the "final" number or the formula used in reaching this number is in dispute.

ance is wrong as matter of law. Each of these arguments will be addressed in detail below.

## A. Mutual Mistake

 Defendants seek to avoid enforcement of the agreement on the ground that the parties were mutually mistaken about the Plan's ability to pay the agreed upon amount or the viability of the Plan post-settlement. The "mutual mistake" defense is properly applied "[w]here a mistake of *both* parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances...." *New York State Electric & Gas Corp. v. Saranac Power Partners, L.P.*, 117 F.Supp.2d 211, 253 n. 79 (N.D.N.Y.2000) (citations omitted) (emphasis added), *aff'd* 267 F.3d 128 (2d Cir.2001). Reformation of a contract is available for mutual mistake provided that the party claiming reformation can " 'show in no uncertain terms, not only that mistake ... exists, but exactly what was really agreed upon between the parties.' " *Loewenson v. London Mkt. Companies*, 351 F.3d 58 (2d Cir.2003) (citations omitted). In addition, "to reform a contract, mutual mistake must be established by clear and convincing evidence." *Collins v. Harrison–Bode*, 303 F.3d 429, 435 (2d Cir.2002).

 Here, defendants assert that they were mistaken as to the both the Plan's ability to pay the agreed amount based on an "unforeseen" decline in the stock market and the Plan's viability post-settlement. Despite defendants' unsupported assertions to the contrary, these alleged "mistakes" are unilateral and, as such, there is no basis for reforming the agreement due to a mutual mistake. *Collins*, 303 F.3d at 435 ("Unilateral mistake alone will not justify reformation of an instrument") (citations omitted). Moreover, stock market losses were hardly an unforeseen event since the defendants had previously abandoned an oral settlement agreement reached in October 2003 for precisely this reason. (*See* Joint Status Report, dated November 1, 2004). Given that the methodology for calculating the settlement amount was clear, unambiguous and explicitly stated on the record by *defense counsel*, who entered this agreement unconditionally and with full knowledge of the stock markets potential impact, reformation is not available on the basis of mutual mistake. *See Loewenson*, 351 F.3d at 62 (affirming district court's refusal to reform settlement agreement on ground of mutual mistake where parties explicitly agreed to the methodology for calculating settlement amount despite the fact that the methodology was flawed).

## B. Impossibility of Performance

 Defendants also argue that the settlement agreement should be set aside because an unforeseen occurrence has made its performance impossible. (Def. Mem. at 8–9). The gravamen of defendants' claim of impossibility is that the Plan has insufficient funds to pay the agreed amount "[d]ue to an unforeseen drastic drop in the stock market beginning in early March [2005] and continuing to the present ...." (Def. Mem. at 4, 8). In support of this claim, defendants have submitted a computer print out of a May 2, 2005 Dow Jones Industrial Average graph report. (*See* "Exhibit D" to Def. Mem). This graph, however, is of little value in determining the performance of the fund's stock assets. Notably absent from the defendants' submission is any evidence of the current valuation of the Plan's assets. The only valuations provided to the court are based on the Plan's assets as of June 2004, making it impossible for the court to assess counsel's claim that the fund will be bankrupted by this settlement agreement. (*See* Exhibits to Def. March 31, 2005 let-

ter). Although defendants have been given ample opportunity to supply this data they have chosen not to do so preferring instead to rely on counsel's allegation of financial "impossibility." (*See* Pl. Aff. in Support of Entry of Settlement Judgment at ¶¶ 5 and 17; Tr. of May 2, 2005 conference before the undersigned at 11–13). Given that the "burden of proof rests on the party seeking to assert the impossibility defense," defendants' failure to provide current valuation data compels the undersigned to recommend that there is no basis to set aside the settlement agreement on the ground of impossibility. *See United States v. Int'l Bhd. of Teamsters,* 816 F.Supp. 864, 873 (S.D.N.Y.1992)(citing *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521(1983)).

Moreover, even if the defendants had provided evidence that the Plan's current assets are insufficient to pay the agreed amount, the defendants' performance under the agreement would not be excused based on "impossibility." The law is clear that performance of a contract is not excused "where impossibility or difficulty of performance is occasioned only by financial hardship, even to the extent of insolvency or bankruptcy." *See, e.g., 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.,* 23 N.Y.2d 275, 281, 296 N.Y.S.2d 338, 244 N.E.2d 37 (1968); *see also Health–Chem Corp. v. Baker,* 915 F.2d 805 (2d Cir.1990) (performance of settlement agreement not excused where decline in the stock market made performance of contract more onerous); *In re Regency Holdings, Inc.,* No. 00 CV 8115(HB), 2001 WL 1033429, *4 (S.D.N.Y. Sept. 7, 2001). Finally, the defense of impossibility requires a showing that the party seeking to avoid the contract "took virtually every action within its power to perform its duties under the contract." *Health–Chem Corp.,* 915 F.2d at 810, (citing *Kama Rippa Music, Inc. v. Schekeryk,* 510 F.2d 837, 842–43 (2d Cir.1975)). Here,

defendants have presented no evidence in this regard. Accordingly, the undersigned finds that there is no basis for excusing defendants from performance of their obligations pursuant to the settlement agreement on the ground of impossibility of performance. *Health–Chem Corp.,* 915 F.2d at 810 ("[Appellant] makes no claim that it took virtually every action within its powers to perform its duties under the contract and therefore cannot assert the defense of impossibility.").

**C. Obligation to Notify Absent Plan Participants of the Discontinuance and Agreement**

Plaintiffs vehemently oppose any delay in implementing the settlement agreement asserting that would further jeopardize the current Plan assets. While the court agrees that delay may jeopardize plaintiffs' ability to collect, delay is warranted for the reasons described below.

Although neither side raised the issue, the undersigned requested that plaintiffs' counsel clarify her obligations to absent plan participants in light of the agreement reached. This request was prompted by a review of the complaint which revealed that plaintiffs brought this case as a derivative action on behalf of the Plan under sections 502(a)(2) and 502(a)(3). The complaint does not assert any claims for individual relief.

Rule 23.1 engrafts a number of procedural requirements on derivative suits. In pertinent part Rule 23.1 provides:

> The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

By its terms, Rule 23.1 applies only to derivative actions brought by shareholders. A review of the case law, however,

indicates that parties who commence a derivative action under certain provisions of ERISA may be subject to the requirements of Rule 23.1. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270 (2d Cir.1992)(Rule 23.1 applies to derivative actions brought under Section 502(g)(2)); *Coan v. Kaufman,* 349 F.Supp.2d 271 (D.Conn.2004) (derivative action brought under 502(a)(2) should comply with the general principles of Rule 23.1); *but see Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1462 (suit by plan beneficiaries to enforce plan against fiduciaries not subject to 23.1); *Bickley v. Caremark RX, Inc.,* 361 F.Supp.2d 1317 (N.D.Ala. 2004)(at odds with ERISA statutory scheme to graft onto ERISA enforcement action additional requirements of 23.1); *Thompson v. Avondale Industries, Inc.,* 2001 WL 1543497 (E.D.La.2001)(rule 23.1 not applicable to action brought under 502(a)(2)).

While it is far from clear whether Rule 23.1 applies to this action, it would be prudent in light of the allegations and the procedural posture of this case for the court to apply some of its safeguards before entering judgment in this case. It now appears that neither side may have considered their obligations to absent participants in reaching this agreement. Indeed, defense counsel in his correspondence to the court dated May 12, 2005, contends that plaintiffs' counsel has abrogated her obligations to absent participants by seeking enforcement of this agreement. The thrust of counsel's argument is that the agreement harms the absent participants by giving the named plaintiffs more than they are entitled to. Incredibly, defense counsel completely ignores the fact that defendants as plan fiduciaries had primary responsibility for insuring that the agreement was fair to all plan participants. Curiously, plaintiffs' counsel in a status letter addressed to the court dated November 1, 2004, acknowl-edged that the derivative nature of this suit prevented her from entering a virtually identical agreement because of potential harm to absent participants. While the agreement reached in this matter certainly vindicates rights provided for in ERISA, which empowers individual plan participants to bring suit to recover benefits due them (see Section 502(a)(1)(B)), it provides no benefit to the absent plan participants. Although plaintiff's counsel correctly points out that this settlement does not impair the rights of absent plan participants who might seek recovery of their own benefits, it may nonetheless impact on their ability to recover. Accordingly, it is recommended that notice of the terms of this agreement and the discontinuance of this action be provided to absent participants before entry of a final judgment.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days from service of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir.1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992).

May 18, 2005.