**OMEGA ENGINEERING, INC.,**
**Plaintiff–Appellee,**

v.

**OMEGA, S.A., Defendant–Appellant.**

**Docket No. 04–5084–CV.**

United States Court of Appeals,
Second Circuit.

Argued May 12, 2005.

Decided Dec. 21, 2005.

Matthew C. Wagner, Ossining, New York (Jess M. Collen, Collen IP, Ossining, New York, of counsel), for Defendant–Appellant.

Thomas A. Smart, New York, New York (Paul C. Llewellyn, Michelle Tepper, Kaye

Scholer LLP, New York, New York, of counsel), for Plaintiff–Appellee.

Before: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

CARDÁMONE, Circuit Judge.

On this appeal we revisit the field of settlement agreements and their enforcement. It is an area of the law well worked over the years. But because the rules governing it have not recently been set out, we think it helpful to write again on this topic. This case presents a new chapter in a long-running trademark dispute between defendant Omega, S.A. (OSA) and plaintiff Omega Engineering, Inc. (Omega Engineering). Omega Engineering seeks enforcement of a settlement agreement the parties concluded in May 2003. OSA contends the agreement was never properly executed and is therefore unenforceable. The United States District Court for the District of Connecticut (Covello, J.) enforced the settlement agreement in a judgment entered August 12, 2004.

## BACKGROUND

### A. *Origin of the Dispute*

Omega Engineering is a Delaware corporation headquartered in Stamford, Connecticut. It manufactures and markets industrial and scientific control and measurement devices and holds trademark registrations for the word "Omega" and a stylized "Ω" for use on such products. *See, e.g.,* U.S. Trademark Registration No. 2,220,409 (Jan. 26, 1999); U.S. Trademark Registration No. 2,208,326 (Dec. 8, 1998); U.S. Trademark Registration No. 818,251 (Nov. 8, 1966). OSA is a Swiss corporation that manufactures and markets watches, clocks, and other precision timepieces also under the "Omega" brand, and also uses the Greek letter "Ω" as its stylized mark. OSA holds U.S. trademark registrations for the word "Omega" and the "Ω" symbol for use on timepieces and timepiece accessories. *See, e.g.,* U.S. Trademark Registration No. 660,541 (Apr. 15, 1958); U.S. Trademark Registration No. 578,041 (July 28, 1953); U.S. Trademark Registration No. 577,415 (July 14, 1953); U.S. Trademark Registration No. 25,036 (July 24, 1894).

In the 1980s Omega Engineering began manufacturing and marketing scientific and industrial timing devices under the "Omega" brand name bearing its stylized "Ω." OSA responded by bringing a series of trademark infringement suits against Omega Engineering that resulted in several limited settlement agreements. *See Omega S.A. v. Omega Eng'g, Inc.,* 228 F.Supp.2d 112, 115–16 (D.Conn.2002) (recounting the history of early litigation between the parties). A global settlement agreement was reached in 1994 (1994 Agreement) that set forth the parties' respective rights to the word "Omega" and the "Ω" mark. The 1994 Agreement provided, in relevant part, that Omega Engineering would use the "Omega" brand name and its stylized "Ω" on timing devices "industrially and/or scientifically employed for measuring or controlling variable parameters such as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain and flow." OSA agreed not to oppose Omega Engineering's trademark applications so long as it abided by this condition.

In fact the 1994 Agreement did not settle the parties' disputes. Instead litigation intensified. In subsequent years, Omega Engineering and OSA engaged in numerous lawsuits with each other alleging various breaches of the 1994 Agreement, including actions in the United States, *see, e.g., Omega S.A.,* 228 F.Supp.2d 112 (action under the Anti–Cybersquatting Consumer Protection Act regarding OEI's registration of the internet domain names

"Omegawatch.com" and "Omega-time.com"), the United Kingdom, *see, e.g., Omega Eng'g Inc. v. Omega S.A.*, 432 F.3d 437, 2005 WL 3485871 F.S.R. 12, 219 (2d Cir.2005) (Eng. Ch.2004) (noting that "there have been many differences and disputes between [the parties] as to their respective intellectual property rights. They are ... currently engaged in some 20 disputes"), and the European Union, *see, e.g.,* Case T–90/05, *Omega, S.A. v. Office for Harmonisation in the Internal Mkt. (Trade Marks & Designs),* 2005 O.J. (C 115) 24 (Ct. First Instance 2005) (action by OSA to reverse a decision awarding certain trademarks to OEI).

This appeal stems from three U.S. trademark applications filed by Omega Engineering on January 21, 1994 seeking rights to its "Omega" marks for "period timers ... industrially and/or scientifically employed" and "industrial and scientific clocks." OSA opposed these applications on the ground they would infringe OSA's registered marks, and Omega Engineering as plaintiff filed a complaint in the United States District Court for the District of Connecticut alleging that OSA's opposition to Omega Engineering's trademark applications constituted a breach of the 1994 Agreement. It is the settlement of that litigation that is the subject matter of this appeal.

### B. *The Settlement Conference*

District Court Judge Covello referred Omega Engineering's complaint to Magistrate Judge Thomas P. Smith for settlement discussions. The magistrate judge directed the parties to attend a settlement conference on May 19, 2003, one day before trial was scheduled to begin before the district court. The magistrate judge directed each party to be represented by counsel and that an appropriate representative of the party with authority to settle be present. The parties met in Magistrate Judge Smith's chambers on that day.

Omega Engineering was represented by its corporate president, Betty Hollander, and OSA was represented by Neal Gordon, general counsel of the Swatch Group, an OSA affiliate of the Swiss company in the United States. The negotiations concluded during that afternoon, at which time a written settlement had been reached (Settlement Agreement). The parties informed the magistrate judge that the case was settled.

The parties together with the magistrate judge went before Judge Covello to report the settlement. Magistrate Judge Smith informed Judge Covello

It's my understanding that the case has been settled, and that all of the terms and conditions have been agreed upon by the parties through counsel, and that this agreement has been reduced to writing. And, it's been represented to me by counsel who are present that the document which contains all of the terms and conditions will be signed by the appropriate individual, located in Switzerland.

Omega Engineering's counsel confirmed that the case was indeed settled, but stated that it was his understanding that defendant needed two weeks to get the agreement signed and get it on file. Counsel for Omega Engineering stated further that the parties "have reached an agreement, [and] it has been reduced to writing." Judge Covello asked OSA's counsel whether this was correct and whether counsel was "in control of this situation as far as being able to note this matter as closed," to which OSA's counsel replied "Yes." The district court then postponed the trial that had been slated to begin the next day.

### C. *OSA Objects to the Settlement Agreement*

After reading the terms of the Settlement Agreement, OSA officers in Switzer-

land refused to sign it. In particular, OSA objected to paragraph 2, which states

> [Omega Engineering] will include a reference to Omega Engineering, Inc., Stamford, Conn., or Omega Engineering, Inc. and its location, on the shipping boxes for all Omega Engineering timers. If [Omega Engineering] uses the name Omega Engineering or any Omega trademark on the goods themselves, Omega Engineering will include a reference to Omega Engineering, Inc., Stamford, Conn., or Omega Engineering, Inc. and its location.

Ironically, the language in this clause was copied, in substantial part, from a proposal made by OSA's counsel in pre-settlement discussions. OSA's proposal in pre-settlement discussions did not specify which marks would trigger Omega Engineering's obligation to include a reference to "Omega Engineering, Inc., Stamford, Conn.," requiring such a reference if "any name or mark is used on the goods themselves." Nonetheless, OSA principals in Switzerland concluded that the language was ambiguous and informed Omega Engineering that they wished to enter into a side letter clarifying this clause. OSA stated that it interpreted the clause to require Omega Engineering not to use the word "Omega" or the stylized "Ω", but only the mark "Omega Engineering, Inc."

Omega Engineering refused this request and filed a motion on June 5, 2003 to enforce the Settlement Agreement. OSA opposed the motion, asserting that the parties never mutually assented to the Settlement Agreement and, absent OSA's signature, there was no agreement for the court to enforce.

## D. *The Enforcement Proceeding*

The district court referred Omega Engineering's motion back to Magistrate Judge Smith for an evidentiary hearing on whether there had, in fact, been mutual assent to the Settlement Agreement. On February 18, 2004 the magistrate judge heard testimony from OSA's general counsel Neal Gordon and Omega Engineering's in-house counsel, Christine Riggs. Riggs, who participated in the settlement conference, testified that the parties informed the magistrate judge on May 19, 2003 that the case was settled and that it had not been made contingent on its being signed. Gordon testified that he had been authorized to settle the dispute with Omega Engineering on OSA's behalf and that he understood the case to be settled on the day of the settlement conference. But, he continued, his authorization to settle was confined within certain limits secretly communicated to him by OSA's principals—to wit, that he would "make certain that Omega Engineering would neither register nor use the trademarks Omega and their logo on timing devices of any sort." During the evidentiary hearing, OSA requested Magistrate Judge Smith recuse himself from considering Omega Engineering's motion because he had personal knowledge of disputed facts concerning the negotiation of the settlement. This request was denied.

The magistrate judge issued a ruling on the motion to enforce the Settlement Agreement on March 24, 2004. It found that Gordon had authority to settle the case on OSA's behalf and that he did so. And, it also found that OSA repudiated the settlement only when it appeared to OSA officers in Switzerland that Gordon made a mistake in agreeing to allow Omega Engineering to use the word "Omega" and the "Ω" mark on its timers. The magistrate judge concluded, "Mr. Gordon's mistake would have no bearing on whether the parties had entered into an enforceable agreement." The judge stated that the Settlement Agreement was represented as a *fait accompli* and that "both counsel for [OSA] and Mr. Gordon acknowledged . . .

that the agreement was not contingent on its being signed." Rather, OSA's signature "was simply a ministerial step in the memorialization of the agreement." The hearing judge ruled that paragraph 2 was not in fact ambiguous, and that OSA "reported the case settled to a magistrate judge and later to a district judge in open court [to] take[ ] itself out from 'under the gun' of imminent trial," and that it later asserted an alleged ambiguity in a bad-faith effort to repudiate the agreement. Even if the agreement was ambiguous, the magistrate judge decided OSA would still be bound because it did not allege fraud or mutual mistake, the only bases for repudiating a binding contract under Connecticut law.

Finally, Magistrate Judge Smith confirmed his earlier ruling that recusal was unwarranted, since his knowledge of the case resulted solely from his judicial role and, in any event, his involvement in the negotiations was minimal; the parties drafted the provisions on their own. The district court adopted the magistrate judge's recommended ruling and entered judgment in accordance with the terms of the Settlement Agreement. *Omega Eng'g, Inc. v. Omega, S.A.*, No. Civ. 3:98CV 2464, 2004 WL 2191588 (D.Conn. Aug.12, 2004). OSA appeals. We affirm.

## DISCUSSION

On its appeal, OSA principally contends the district court erred in finding that it agreed to be bound by the Settlement Agreement absent the signatures of OSA officers in Switzerland. OSA also raises four additional grounds of alleged error: (1) paragraph 2 of the agreement is ambiguous and therefore OSA could not have consented to it, (2) the district court erred in finding Gordon had authority to bind OSA to the Settlement Agreement as drafted, (3) the magistrate judge improperly assigned OSA the burden of proving the Settlement Agreement was unenforce-

able, without first requiring Omega Engineering to prove an agreement existed, and (4) the magistrate judge should have recused himself from passing on the enforceability of the Settlement Agreement. We will analyze each of these arguments in turn.

### I Whether OSA Agreed to be Bound by the Settlement Agreement

#### A. *Standard of Review*

We review a district court's factual conclusions related to a settlement agreement, such as whether an agreement exists or whether a party assented to the agreement, under the clearly erroneous standard of review. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir.1997). We review *de novo* a district court's legal conclusions with respect to its interpretation of the terms of a settlement agreement, *see Collins v. Harrison–Bode*, 303 F.3d 429, 433 (2d Cir. 2002), and its interpretation of state law, *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 134 (2d Cir.2005).

#### B. *Applicable Legal Principles*

##### 1. *In General*

In a diversity case we apply the substantive law of the forum state, here Connecticut. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 n. 23 (2d Cir.2004). A settlement agreement is a contract that is interpreted according to general principles of contract law. *Collins*, 303 F.3d at 433 (*citing Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir.1999)). Although our cases have stated this rule as it arises under New York law, Connecticut's law is the same. *See, e.g., HLO Land Ownership Assocs. Ltd. P'ship v. City of Hartford*, 248 Conn. 350, 356, 727 A.2d 1260, 1264 (1999) ("[A] judgment rendered in accordance with . . . a

stipulation of the parties is to be regarded and construed as a contract.... Thus, our resolution of the plaintiff's claim is guided by the principles that govern the construction of contracts.").

█ In Connecticut, a contract is binding if the parties mutually assent to its terms. *Ubysz v. DiPietro*, 185 Conn. 47, 51, 440 A.2d 830, 833 (1981); *see Johnson v. Schmitz*, 237 F.Supp.2d 183, 189 (D.Conn.2002) (applying this rule to settlement agreements). When both parties have mutually assented to a contract, the agreement is binding even if it is not signed. *Schwarzschild v. Martin*, 191 Conn. 316, 321–22, 464 A.2d 774, 777 (1983); *see Millgard Corp. v. White Oak Corp.*, 224 F.Supp.2d 425, 432 (D.Conn. 2002) (applying this rule to settlement agreements). The same rule exists under federal law. *See Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL–CIO*, 402 F.3d 314, 318 (2d Cir.2005) ("[A] voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed.").

█ A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are "clear and unambiguous." *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729, 733 (1993). Such power is "especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir.1986); *Audubon Parking*, 225 Conn. at 811–12, 626 A.2d 729, 733 (same).

2. *Determining Assent Absent Signing*

█ The Connecticut Supreme Court has held that "[a] contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation." *Klein v. Chatfield*, 166 Conn. 76, 80, 347 A.2d 58, 61 (1974). The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish. *Id.*; *see Wellington Sys., Inc. v. Redding Group, Inc.*, 49 Conn.App. 152, 160–61, 714 A.2d 21, 27 (1998) (same).

The parties do not cite *Klein* or the factors it described, but rather dispute the four common law factors we identified in *Ciaramella* and *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). These factors ordinarily guide our inquiry into whether parties intend to be bound in the absence of an executed writing, and they are similar, though not identical, to the factors laid out in *Klein.* While we doubt that the *Winston* factors—which derive from the Restatement (Second) of Contracts, a source frequently relied on by Connecticut courts, *see, e.g., Updike, Kelly & Spellacy, P.C. v. Beckett*, 269 Conn. 613, 662–64, 850 A.2d 145, 176–77 (2004); *Mandell v. Gavin*, 262 Conn. 659, 668–69, 816 A.2d 619, 624–25 (2003)— are incompatible with *Klein*, we think the *Klein* factors are applicable in this diversity case. *See Wellington Sys., Inc.*, 49 Conn.App. at 161, 714 A.2d at 27 (relying on *Klein* to determine whether a contract had been formed in the absence of a formal written agreement). Therefore, in evaluating the district court's conclusion that OSA assented to the contract without signing, we follow the factors set forth in *Klein* (i.e., we consider OSA's motives and purposes in negotiating the agreement, the language used in the agreement, and the circumstances of its execution)—mindful, of course, that we may only reverse the district court's judgment if we find clear error.

### C. Application of Legal Principles to the Present Case

We find ample evidence to conclude that OSA assented to the Settlement Agreement and intended to be bound by it without first affixing its signature.

First, OSA's motive in negotiating the Settlement Agreement was to avoid a trial. Magistrate Judge Smith said in his recommended ruling that to get out from being under the gun of imminent trial, OSA *had* to settle the case on May 19, 2003 because otherwise the trial would not have been postponed. Instead, trial would likely have begun the next day had OSA informed him that the Settlement Agreement was contingent on further review by OSA principals in Switzerland. Going to trial would not have served OSA's purpose in seeking a settlement.

The next *Klein* factor, the language of the contract, offers some support for OSA's contention that a signing was anticipated. For example, paragraph 6 of the agreement provides that "[t]he parties will execute and file the stipulation of dismissal with prejudice ... *immediately upon execution* of this Settlement Agreement," (emphasis added); and paragraph 10 provides that "[t]his Settlement Agreement cannot be waived, altered, modified, changed, amended, rescinded or terminated *except by an instrument signed in writing* by an officer of each of the parties hereto," (emphasis added). The former provision may be taken to imply that the Settlement Agreement anticipated a moment of "execution," presumably a signing, upon the occurrence of which the lawsuit would be dismissed. With respect to the latter provision, if all future modifications to the agreement require a signature in order to be valid, it is reasonable to infer that the agreement itself might be conditioned on the same formality. While these provisions suggest that a signing was *envisioned*, they do not establish that the obligations imposed by the contract were *contingent upon* the signing.

Finally, the circumstances under which the Settlement Agreement was executed do not support OSA's assertion that its signature was required. For example, counsel for the parties represented to both judges that the complete agreement had been reduced to writing and the case was settled. Further, the magistrate judge heard testimony from Omega Engineering's counsel—and had direct knowledge based on prior representations from OSA's counsel—that the parties understood the signature of an OSA officer in Switzerland was simply a "ministerial" act. OSA contends that the history of negotiation between the parties shows that it consistently sought to limit or preclude Omega Engineering's use of the word "Omega" and the "Ω" mark on timers, and thus OSA principals would have needed to sign any agreement that allowed Omega Engineering to use those marks. We do not think the circumstances warrant such an inference. If anything, the circumstances support the conclusion reached by the magistrate judge that OSA's contentions are actually a thinly veiled attempt by OSA's principals to rewrite an agreement to which their authorized representative assented because, upon further review, they are dissatisfied with its terms and believe their representative made a mistake. This conclusion is bolstered by the fact that OSA itself, through counsel, proposed much of the operative language in paragraph 2 that it now contends is unacceptably ambiguous. It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made. *See Sartor v. Town of Manchester,* 312 F.Supp.2d 238, 244 (D.Conn.2004); *Restatement (Second) of Contracts* § 171 (cmt.a) (1981).

In light of the factors considered by the Connecticut Supreme Court in *Klein,* the facts of this case reveal that nothing "remain[ed] to be done to establish the contractual relation" between OSA and Omega Engineering. *Klein,* 166 Conn. at 80, 347 A.2d at 61. We thus find no error, let alone clear error, in the district court's conclusion that OSA, through its authorized representative, assented to the terms of the Settlement Agreement and agreed to be bound without the signatures of OSA principals in Switzerland. Consequently, there was no impediment to the district court's summary enforcement of the Settlement Agreement. *See Audubon Parking,* 225 Conn. at 811, 626 A.2d at 733; *Janus Films,* 801 F.2d at 583.

II   OSA's Other Challenges on Appeal

We now turn to OSA's four other arguments, noted earlier, seeking reversal of enforcement of the Settlement Agreement: the alleged ambiguity of paragraph 2 of the Settlement Agreement, Gordon's authority, placing the burden of proof to show invalidity on OSA, and recusal of the magistrate judge.

A.   *Alleged Ambiguity of Paragraph 2*

OSA argues that paragraph 2 of the Settlement Agreement is ambiguous, and therefore OSA could not have consented to it. We doubt, however, that under Connecticut law one party's allegation that a contract is unclear is enough to render an otherwise valid contract unenforceable. "[A]ccording to general principles of contract law, rescission based on a mistaken understanding of the terms of an agreement is available only where the mistake is mutual, or where one party's mistake has been caused by the other party's fraud." *Gebbie v. Cadle Co.,* 49 Conn.App. 265, 276–77, 714 A.2d 678, 684 (1998) (citing *Restatement (Second) of Contracts* §§ 152, 153). In any event, we think paragraph 2 is unambiguous.

Under Connecticut law a contract is unambiguous when "its language is clear and conveys a definite and precise intent." *United Illuminating Co. v. Wisvest–Conn., LLC.,* 259 Conn. 665, 670, 791 A.2d 546, 550 (2002). Conversely, a contract is ambiguous when the language "is susceptible to more than one reasonable interpretation." *Id.* at 671, 791 A.2d at 550. In determining whether the language in a contract is ambiguous, the words must be given " 'their natural and ordinary meaning,' " and the fact that the parties interpret a provision differently does not mean the language is *per se* ambiguous. *Id.* at 670, 791 A.2d at 550. Moreover, there is a presumption against finding ambiguity where, as here, a contract is of a commercial nature between sophisticated parties. *Id.*

Our *de novo* review of the terms of the Settlement Agreement persuades us that the language in paragraph 2 is not ambiguous. Paragraph 2 clearly requires Omega Engineering to "include a reference to Omega Engineering, Inc., Stamford, Conn." on timing devices, but only if it chooses to "use[ ] the name Omega Engineering *or any Omega trademark* on the goods themselves" (emphasis added). In other words, Omega Engineering may use its Omega trademarks (such as the word "Omega" or its stylized "Ω") on its timers as long as it also includes a reference to "Omega Engineering, Inc., Stamford, Conn." Given the state law presumption against finding ambiguity in a commercial contract of this sort, we do not see how the language in paragraph 2 can reasonably be read the way OSA does: to *forbid* Omega Engineering from using the word "Omega" or an Omega trademark on timers and *only* allow the use of the phrase "Omega Engineering, Inc., Stamford, Conn."

B.   *Gordon's Authority to Settle*

The magistrate judge ordered the appropriate persons with settlement au-

thority to attend the settlement conference. Gordon informed the court that OSA had given him such authority and never communicated any limitation on that authority to Omega Engineering or either judge. Yet, in his testimony at the evidentiary hearing nine months later, Gordon stated that OSA made his authority contingent on his making "certain that Omega Engineering would neither register nor use the trademarks Omega and their logo on timing devices of any sort."

Regardless of whether Gordon's authority to settle had been secretly limited by OSA, the Settlement Agreement to which he assented is still binding on his employer. Every agent is likely to have secret negotiating limits dictated by the principal, but other parties may safely assume that any agreement the agent agrees to is within his authority unless there is reason to believe he is exceeding it. *See Int'l Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 55 (2d Cir.1979). No limitation of authority was communicated to any of those involved in the settlement at the relevant time.

### C. *Burden of Proof*

■ Under Connecticut law the proponent of a contract must prove the existence of a valid agreement by a preponderance of the evidence. *See, e.g., Chem–Tek, Inc. v. Gen. Motors Corp.*, 816 F.Supp. 123, 131 (D.Conn.1993); *Coelho v. Posi–Seal Int'l, Inc.*, 208 Conn. 106, 112, 544 A.2d 170, 173 (1988) (same for implied contracts). The non-performing party must then show that performance under the contract is excused due to fraud, lack of actual consent, or mutual mistake. *Conn. Nat'l Bank v. Cooper*, 232 Conn. 405, 413–14, 656 A.2d 215, 218–19 (1995); *see Callen v. Penn. R.R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either

by fraud practiced upon him or by a mutual mistake under which both parties acted.").

OSA contends the district court and magistrate judge simply assumed the Settlement Agreement was binding and moved directly to placing the burden on appellant without having made any findings as to the existence of the contract. On the contrary, the magistrate judge's recommended ruling—which the district court adopted—clearly finds, on the basis of testimony and evidence presented to the magistrate judge, that a binding agreement existed between the parties. Only upon establishing this factual predicate did the magistrate judge shift the burden to OSA to prove fraud, lack of actual consent, or mutual mistake. Of course, no proof of fraud or mistake was proffered.

### D. *OSA's Motion to Recuse the Magistrate Judge*

■ Finally, OSA asserts that the magistrate judge's personal knowledge of the facts surrounding the settlement conference required him to recuse himself from considering Omega Engineering's subsequent motion to enforce the Settlement Agreement. OSA relies on 28 U.S.C. § 455(b)(1) (2000), which states that a judge or magistrate must recuse himself "[w]here he has . . . personal knowledge of disputed evidentiary facts concerning the proceeding."

■ We review a judge's refusal to recuse himself for abuse of discretion, *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir.2003), considering whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992); *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987) (same). Knowledge gained from the

judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1). *Katsaros v. Cody*, 744 F.2d 270, 283 (2d Cir.1984).

Here, the magistrate judge's knowledge of the Settlement Agreement arose solely from his judicial duty to oversee the settlement conference. He was not involved in the actual negotiations, but simply observed them and provided facilities to support the settlement. Since his knowledge was not extrajudicial, it was not an abuse of his discretion to decline to recuse himself.

▆▆▆▆▆▆ Moreover, recusal motions must be brought " 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' " *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir.1996) (*quoting Apple*, 829 F.2d at 333). We look to four factors in determining whether a motion for recusal is untimely: (1) whether the party seeking recusal has participated in trial or pre-trial proceedings; (2) whether granting the motion would waste judicial resources; (3) whether judgment preceded the motion; and (4) whether the party seeking recusal can show good cause for delay. *Taylor v. Vermont Dep't of Ed.*, 313 F.3d 768, 794–95 (2d Cir.2002).

Judge Covello referred Omega Engineering's motion to enforce the Settlement Agreement to the magistrate judge on July 15, 2003, but OSA waited until the middle of the evidentiary hearing on February 18, 2004—seven months later—to move for recusal. This delay was excessive. *See, e.g., United States v. Durrani*, 835 F.2d 410, 427 (2d Cir.1987) (finding a delay of four months untimely); *Apple*, 829 F.2d at 334 (finding a delay of two months untimely). OSA participated in all stages of the litigation and had all information necessary to move for recusal on July 15, 2003. It gave no indication of any good cause for its delay, and for Magistrate Judge Smith to have recused himself at that late date would have resulted in a considerable waste of judicial resources. OSA's recusal motion was therefore untimely. Its remaining arguments with respect to recusal are either waived because they were not raised when it moved for recusal or else are without merit.

## CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the district court enforcing the parties' Settlement Agreement is affirmed.