*Dervishi v. Dep't of Special Educ.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand twenty-one.

PRESENT:
> DENNIS JACOBS,
> JOSEPH F. BIANCO,
> MICHAEL H. PARK,
> *Circuit Judges.*

_____

Shkelqesa Dervishi, on behalf of T.D.,

        *Plaintiff-Appellant*,

      v.                                                18-2745-cv

Department of Special Education, in Stamford Public School, Stamford Board of Education,

        *Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT:        DEBORAH G. STEVENSON, Deborah G. Stevenson Law, LLC, Southbury, CT, *counsel for* Shkelqesa Dervishi (*on the brief*), Stamford, CT.

FOR DEFENDANTS-APPELLEES:        RICHARD J. BUTURLA, Berchem Moses PC, Milford, CT.

Appeal from an order of the United States District Court for the District of Connecticut (Eginton, *J.*; Fitzsimmons, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Appellant Shkelqesa Dervishi, *pro se*, sued the Stamford Board of Education ("the Board") individually and on behalf of her autistic son, T.D., claiming that he was denied a free and appropriate public education ("FAPE") required by the Individuals with Disabilities Education Act ("IDEA"). The district court ruled against her on the merits and a prior panel of this Court affirmed the decision with one exception: We remanded because, under the "stay-put" provision of the IDEA, 20 U.S.C. § 1415(j), Dervishi was entitled to reimbursement for the home-based education program T.D. received while the parties' dispute was pending. *See Dervishi v. Stamford Bd. of Educ.*, 653 F. App'x 55 (2d Cir. 2016). The Board had agreed to reimburse Dervishi for certain expenses of that program in a settlement agreement. Therefore, we directed that "[o]n remand, the district court should (i) calculate the total value of the home program, as specified in the settlement agreement, for the period from November 18, 2010 until the dispute over the 2010–2011 IEP is no longer pending, and (ii) order the Board to pay that amount to Dervishi." *Id*. at 58.

On remand, pursuant to a referral by the district court, the magistrate judge held an evidentiary hearing to determine the amount the Board owed to Dervishi under the terms of the settlement agreement, and Dervishi also requested compensatory education for the first time. The

magistrate judge issued a Recommended Ruling, which contained factual findings and recommended granting Dervishi's requests for reimbursement for services that were in place when the dispute began and for mileage traveled to transport T.D. to those services, but denying Dervishi's requests for reimbursement for therapy received in 2015 and 2016, YMCA classes, payment for her own time working with T.D. and transporting him to services, and compensatory education. The district court adopted the magistrate judge's Recommended Ruling, and Dervishi appealed. In July 2020, we denied Dervishi's request for an injunction granting immediate compensatory education and requested briefing on whether she was permitted to represent her child in this proceeding.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

The district court proceedings on remand consisted of an evidentiary hearing. Accordingly, as with a bench trial, "we review the district court's findings of fact for clear error and its conclusions of law *de novo*. Mixed questions of law and fact are also reviewed *de novo*." *Castillo v. G&M Realty L.P.*, 950 F.3d 155, 165 (2d Cir. 2020); *accord Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). Under this standard, we review *de novo* the district court's "legal conclusions with respect to its interpretation of the terms of a settlement agreement." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

---

[1] The issue of whether Dervishi is permitted to appear *pro se* on behalf of her child in this appeal has been rendered moot by Dervishi having retained counsel on October 21, 2020. Moreover, counsel for Dervishi clarified at oral argument that, although Dervishi is challenging the district court's denial of Dervishi's requests for certain reimbursements after the remand, she is not challenging the denial of compensatory education as prospective equitable relief.

3

Based on our review of the record and relevant case authority, we conclude that the district court properly construed the terms of the settlement agreement and did not err in calculating the amount owed to Dervishi, with the exception of Dr. Stephanie Bader's services. In the parties' settlement agreement, the Board agreed to reimburse Dervishi and her husband for the following costs related to T.D's home-based program: (a) "$2,500 per week for the cost of speech, occupational therapy[,] . . . [Applied Behavioral Analysis ("ABA")] services, and autism consulting services provided to [T.D.]" as evidenced in "documentation of payments" made by T.D.'s parents; and (b) "their provision of transportation of [T.D.] to and from his sessions with service providers . . . based on the applicable IRS mileage rate." Record on Appeal ("ROA") doc. 30 at 13. The term "autism consulting services" was not defined, but Dr. Wayne Holland, the Director of Special Education Services for Stamford public schools who signed the agreement on behalf of the Board, testified that "it would be a company or an individual that offers services to families and children that are on the autism spectrum." ROA doc. 138 at 38. He further testified that, under the agreement, "the type of service would have been directed . . . by [T.D.'s] family," that "the parents were given a lot of latitude to help design the services," and that some of Dr. Carol Fiorile's services qualified as autism consulting services. *Id.* at 17, 38. The parties' testimony established that Dr. Fiorile was a Board-Certified Behavior Analyst ("BCBA") who directed and supervised the home-based program at the time the dispute began; she did not work with T.D. one-on-one but rather observed and supervised the ABA therapists working with T.D. and Dervishi to ensure T.D. was progressing in the home-based program she designed. Dervishi testified that she sought Dr. Bader's help with T.D.'s autism-related behavioral issues because Dr. Fiorile was not available. Dr. Bader, who is also a BCBA, testified that she provided services to both T.D. and

4

his mother that addressed his autism-related behavioral issues, and the parties do not dispute that she was qualified to do so. She worked with T.D. on his behavioral issues both directly and by observing Dervishi work with him and offering advice to her. Trial testimony also demonstrated that Dervishi's inclusion in the therapy was not unique to Dr. Bader's work; T.D.'s services at the Communication Clinic of Connecticut, which were covered by the settlement agreement, were also directed to the family. Assessment of the evidence as a whole clearly supports a finding that Dr. Bader's services were substantially similar to services the Board agreed to cover in the settlement agreement and fell squarely within the Board's understanding of "autism consulting services." Accordingly, the district court erred in denying this request as unrelated "family therapy," and Dervishi is entitled to be reimbursed $740 for what she paid for those services.

The district court correctly denied Dervishi's other requests. Dervishi argued that she should be reimbursed over $400,000 for 7,000 hours she spent providing T.D. with "ABA services," relying on *Bucks County Department of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61 (3d Cir. 2004). In the settlement agreement, the Board agreed to reimburse the parents only for transportation expenses "based on the applicable IRS mileage rate," not for their time or other work. ROA doc. 30 at 13. The Board also agreed to reimburse the parents for "ABA services" in the settlement agreement. Based on the parties' testimony and the home-based program in place at the time this dispute began, it is clear that "ABA services" referenced ABA therapy and related work by qualified professionals. Dervishi's testimony also plainly established that she was not a qualified provider of ABA therapy. Her formal education was in accounting and finance, and her only "training" as a therapist consisted of observing T.D.'s therapists and working with T.D. under their observation, and attending a single course designed

5

for parents in 2004. Thus, the terms of the settlement agreement clearly precluded reimbursement for any services Dervishi provided herself. Her reliance on *Bucks County* is unavailing because, in that case, the court was crafting an equitable remedy for an IDEA violation where the school board refused to provide services, and the mother had shown that a trained service provider was not available. 379 F.3d at 63. Here, however, the school board did not refuse to provide services within the reimbursement period, Dervishi's claims that there was an IDEA violation have already been rejected by this Court, and the only reimbursement Dervishi is entitled to was that agreed upon in the settlement agreement.

Finally, Dervishi's own testimony about the YMCA classes established that those services were provided by children. Accordingly, the YMCA classes also did not fall within the scope of "ABA services."

\* \* \*

We have considered all of Dervishi's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **VACATED** and **REMANDED** with regard to reimbursement for Dr. Bader's services, and **AFFIRMED** in all other respects.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6