20-2778-cv
Doe v. Hotchkiss School

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand twenty-two.

PRESENT: AMALYA L. KEARSE,
　　　　　　RAYMOND J. LOHIER, JR.,
　　　　　　EUNICE C. LEE,
　　　　　　　　*Circuit Judges.*
-----------------------------------------------------------------

JOHN DOE,

　　　　　　*Plaintiff-Appellant,*

　　　　v.　　　　　　　　　　　　　　　　　　No. 20-2778-cv

THE HOTCHKISS SCHOOL,

　　　　　　*Defendant-Appellee.**

-----------------------------------------------------------------

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

FOR PLAINTIFF-APPELLANT:    JED I. BERGMAN (Tian "Skye" Gao, *on the brief*), Glenn Agre Bergman & Fuentes LLP, New York, NY

FOR DEFENDANT-APPELLEE:    LINDA L. MORKAN (Jeffrey J. White, Andrew A. DePeau, *on the brief*), Robinson & Cole LLP, Hartford, CT

Appeal from a judgment of the United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

John Doe appeals from a judgment of the United States District Court for the District of Connecticut (Bolden, <u>J.</u>) granting The Hotchkiss School's motion to enforce a February 2020 settlement agreement, denying Doe's cross-motion to enforce a purported August 27, 2019 settlement agreement, and dismissing the case. We assume the parties' familiarity with the underlying facts and prior record of proceedings, to which we refer only as necessary to explain our decision to affirm.

"We review a district court's factual conclusions related to a settlement agreement, such as whether an agreement exists or whether a party assented to

2

the agreement, under the clearly erroneous standard of review." Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005). "We review de novo a district court's legal conclusions with respect to its interpretation of the terms of a settlement agreement and its interpretation of state law." Id. Under Connecticut law, which the parties agree applies here, "a contract is binding if the parties mutually assent to its terms," id. at 444, and a trial court may "enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous,'" id. (quoting Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc., 626 A.2d 729, 733 (Conn. 1993)). "A contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation." Klein v. Chatfield, 347 A.2d 58, 61 (Conn. 1974). "The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties regard as incomplete." Id.

The following facts and procedural history are not disputed. In 2015 Doe sued Hotchkiss, asserting various tort claims in connection with sexual abuse he

allegedly suffered as a student at the school.[1]  On August 27, 2019, the parties agreed to settle and signed a memorandum of understanding ("MOU") stating that "[t]he release and documentation [would] follow within five (5) business days."  In December 2019, after several months of further negotiation, Doe sent Hotchkiss a notarized and signed copy of the full proposed settlement agreement, which Hotchkiss countersigned in February 2020 (for the sake of brevity, we refer to this as the "February agreement").  When it later became clear that Doe did not view the February agreement as binding, Hotchkiss filed a motion to enforce it.  Doe, maintaining that Hotchkiss's February signing did not create a contract, filed a cross-motion to enforce the agreement the parties reached in August 2019.  The District Court granted Hotchkiss's motion and denied Doe's motion.  At the heart of this appeal, therefore, are the August 2019 MOU, on the one hand, and, on the other hand, the February agreement that the District Court found constituted an enforceable contract.

---

[1] Some portions of the appendix have been filed under seal; they are hereby deemed unsealed to the extent that their contents are quoted or described in this order.

We first address the August 2019 MOU that Doe moved to enforce as the parties' settlement agreement. We agree with the District Court's conclusion that, based on the record before it on the cross-motions to enforce, the parties did not regard the MOU or any attendant oral agreement as complete. In particular, Doe and Hotchkiss left open at least one material term—namely, the terms of the release provision, pursuant to which, among other things, Hotchkiss would be released from current and future liability relating to Doe's claims. The MOU's only mention of a release was "[t]he release and documentation to follow . . . ." In subsequent filings before the District Court, moreover, Doe conceded that the parties needed additional time to "finalize the settlement"—referring to the August 2019 MOU to settle—and acknowledged that "terms concerning the release remain[ed] open." App'x 118; see also id. at 122, 126, 130. The parties therefore did not have an understanding that constituted an enforceable agreement in August 2019, and we conclude that the District Court did not err in denying Doe's cross-motion to enforce it.[2] See Amica Mut. Ins. Co. v. Welch Enters., Inc., 970 A.2d 730, 732 (Conn. App. 2009).

---

[2] Doe argues that Hotchkiss is equitably estopped from denying the validity of the

Unlike the August 2019 MOU, the February agreement was clear, unambiguous, and contained all material terms. As indicated above, the February agreement was the document that Doe first proposed and signed on December 20, 2019, and which Hotchkiss eventually accepted in February. After receiving Doe's December offer, however, Hotchkiss did not immediately accept it, stating on January 3 that the offer contained terms that Hotchkiss had already "told [Doe] w[ere] not acceptable." On January 3 and 13, Hotchkiss sent Doe proposed revisions to the December offer, to which Doe responded that Hotchkiss's "proposed language torpedoes the deal." Even if those initial responses by Hotchkiss had the effect of terminating Doe's December offer, see, e.g., Restatement (Second) of Contracts §§ 38, 39 (1981) ("Restatement"); Cavallo v. Lewis, 473 A.2d 338, 340 (Conn. App. 1984) (citing Restatement § 38); Al Dente, LLC v. Consiglio, 157 A.3d 743, 752 (Conn. App. 2017) (citing Restatement § 39), that effect was merely temporary. On January 17, 2020, Doe's counsel—referring

August 2019 agreement because the school did not immediately challenge the agreement and allegedly "misled Doe into believing that the parties mutually intended to be bound by [it]." Appellant Br. at 38. This argument finds no support in the record, which shows, if anything, that Hotchkiss continued negotiating with Doe precisely because the school did not believe a final agreement had been reached.

to Doe's December offer as a "Release"—represented to the District Court, in writing under penalty of perjury, that Doe "was and is ready to standby [sic] the Release he executed on December 20, 2019." Thus, as of January 17, 2020, Doe had made an offer that contained all of the terms necessary to constitute a settlement agreement. Hotchkiss sent its signed acceptance of that offer, without changes, to Doe's attorneys on February 19, 2020.

Despite the representation of his counsel, Doe claimed in an April 30, 2020 declaration to have subsequently revoked his offer in a private meeting with a Hotchkiss representative on February 11, 2020. But that representative denied that Doe ever made such a statement, stating that "Hotchkiss and its counsel left the [February 11] settlement conference with the understanding that the version of the settlement agreement and release that Plaintiff previously signed was still open and could be accepted by Hotchkiss." The District Court did not clearly err in accepting Hotchkiss's version of events relating to the meeting and finding that there was "nothing in this record suggesting that . . . Doe, himself or through his counsel, expressed to Hotchkiss any intent to repudiate the [February 2020] Settlement Agreement before Hotchkiss signed it." Sp. App'x 15; see Krist v.

7

Kolombos Rest. Inc., 688 F.3d 89, 95 (2d Cir. 2012) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985))). Nor did the District Court err when it found that Hotchkiss accepted Doe's offer and created an enforceable settlement agreement by countersigning the agreement in February 2020. On appeal, Doe argues that we should remand for the District Court to conduct an evidentiary hearing as to the existence of a binding settlement. But Doe waived this argument during the District Court's hearing on these competing motions in July 2020 when, in response to a direct question from the court, his attorney unequivocally disclaimed any need for an evidentiary hearing. We decline to order such a hearing now.

Even assuming that Doe revoked his December 2019 offer before Hotchkiss countersigned it, the District Court properly determined that, under Connecticut law, Doe was nevertheless bound by the actions of his then-counsel, who had apparent authority to accept the settlement agreement on Doe's behalf. A lawyer has the apparent authority to bind the client to an enforceable

8

settlement agreement where it appears from the client's conduct that the client "held the [lawyer] out as possessing sufficient authority to embrace" the agreement and "the opposing party or lawyer reasonably believes that the lawyer has actual authority to effect a settlement and that belief is traceable to manifestations of the client." Ackerman v. Sobol Family P'ship, LLP, 4 A.3d 288, 299 (Conn. 2010) (quotation marks omitted). "Third parties who interact with the principal through the agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so." Id. at 301 (quotation marks omitted).

Here, Hotchkiss reasonably assumed that Doe's counsel—who had represented that Doe "was and is ready to standby [sic]" the settlement agreement proposal "he executed on December 20, 2019,"—had the authority to accept the settlement agreement on his behalf. On February 20, 2020, Doe's counsel urged Hotchkiss to "wire the funds into the . . . escrow account," expressing a desire to "close this one as soon as possible." The District Court did not err in finding that Hotchkiss reasonably relied on counsel's apparent

authority to accept a settlement on Doe's behalf after Doe had already signed it. See Ackerman, 4 A.3d at 300. Doe argues that he promptly challenged his counsel's purported authority, but the record demonstrates that, by the time he did so a month later, in mid-March 2020, he had received an initial apology, had demanded and received a revised apology, and, although Hotchkiss declined to make further revisions, he proceeded to spend a substantial portion of the settlement proceeds. See id. at 300 (explaining that a principal's "[f]ailure . . . to express dissent" when "a reasonable person would express dissent to the inference that other persons will draw from silence" may convey the agent's apparent authority).

We have considered Doe's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
